OCTOBER AND NOVEMBER TERM, 1881.

## School District of McKeesport *versus* Miller.

A committee of a board of school directors appointed " to get up plans for a new school building in 2d Ward, from some architect, and submit the same for approval at the next meeting of the board," has authority to contract with an architect for plans and specifications as well as a preliminary sketch.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny County.*

Assumpsit, by D. Knox Miller, against the school district of McKeesport, to recover for services as an architect in preparing plans and specifications for the erection of a school building.

On the trial in the Court below, before STOWE, J., the following facts appeared :

At a meeting of the school directors of McKeesport, held the 6th of November, 1879, the minutes of the board showed that,

" A resolution was then offered that when we build in 2d ward, that we build a building of not less than twelve rooms. . . . .

" On motion a committee of three, consisting of Scott, Learn, and Clark, were appointed to get up plans for a new school building, in 2d ward, from some architect, and submit the same for approval at the next meeting of the board."

At the request of the committee, the plaintiff prepared the preliminary sketches, and submitted them to the committee.

The minutes of the board, December 4th, 1879, contained the following :

" Building committee presented two plans for new school building in 2d ward.  On motion, report received, and committee continued, and instructed to receive proposals from architects and report at next meeting."

Under instructions from the committee, the plaintiff prepared another sketch, with plans and specifications.

The minutes of the board for January 12th, 1880, contained the following :

" Building committee of new 2d ward school-house report progress, and state that there are some architects yet to hear from, who have signified their intentions to send in pencil sketches.  It was voted that the plans be referred to the committee, and during the time the papers are in the hands of the committee, that they confer with other mem-

bers of the board as to size and kind of building to be erected, and report at an early date.

"It was then voted that the committee be instructed to report in favor of a twelve-room house."

Plaintiff claimed for the sketch $236.31 and for the plans and specifications $354.91. None of them were used, the board having employed another architect. It was contended by the defendant that the action of the committee was unauthorized.

The Court charged the jury, *inter alia :*

"The minutes are the evidence, and they are to stand as conclusive against the board, as indicating the real act done, without the evidence, adduced by the members of the board, is such as to fully and clearly satisfy the jury that they are a misstatement of what actually occurred at the time. They are not only *prima facie* evidence, but are evidence that ought to control until the verbal testimony against them indicates, to the full satisfaction of the jury, that the minutes prepared under the act of Assembly, and required by law, do not set forth the exact state of facts, and if that is made to appear, then the jury are to take the facts as they appear from the testimony, and be governed by the actual transaction rather than by the minutes of it. The minute, of course, is for the purpose of giving evidence of what occurred, and it is to be so taken throughout, but is not to be conclusive if the oral or verbal evidence shows it was a mistake, whether intentional or otherwise, of the secretary. But in examining this question, the jury ought not to forget the fact that the common and proper practice is that when the minutes are prepared (which are generally prepared after the meeting), they are submitted to the next meeting of the board, and are, or ought to be, read in the hearing of all the members of the board constituting a quorum, and then either corrected or allowed to stand as they are supposed or understood to be—an exact transcript of what occurred before. [Now, if you believe that the evidence on the part of the defendant is not sufficient to indicate fairly and with reasonable satisfaction to your minds that the minute is incorrect, then the minute itself would give an authority to this committee to contract with the plaintiff not only for sketches, but for the plans, and in the absence of any other evidence to the contrary, would authorize them not only to contract with him, but justify him, if they did so contract, to charge his fair and proper price, whatever the evidence satisfies you is the proper amount for the services he rendered. . . .

"You take the minute and all the testimony ; the burden of proof is upon the defendant to satisfy you that the minute

does not itself set forth the exact state of facts, because we instructed you, as matter of law, that upon the face of the minute it would authorize the committee to employ the plaintiff to make the working plans and specifications under the testimony in the case."]

Counsel for the defendant excepted to the charge.

May 21, 1881, verdict for the plaintiff for $637.20, on which judgment was entered.

Defendant then took a writ of error, assigning as error that part of the charge within brackets.

*J. S. Ferguson* and *J. W. Baillie* for plaintiff in error.

Whatever was obtained by the committee was to be submitted to the board for its approval, and the reservation of the right to approve or reject ought to have some effect in determining the meaning of the word. Did the board mean to give its committee power to employ an architect not only to make designs, but also to make drawings and specifications, before anything was submitted for its approval, or did they mean that the architect should prepare a design and estimate its cost, so that they might determine whether the design pleased and the price suited, before they determined to adopt his ideas. If the Court's construction is correct, the preliminary sketches were a useless expense. The architect might as well have made the full plans and specifications in the first place.

*Knox & Reed* for defendant in error.

It is manifest that the word plans would include preliminary sketches; that a preliminary sketch is, in a sense, a plan; but the word has a more comprehensive meaning, and includes any model, design, or scheme of a thing to be done, whether of a rough, preliminary character, or complete in every detail. The jury has said the board did not use the word in its limited sense, hence its broader meaning must have been intended, and the Court was certainly correct in saying that in the absence of any limitation, express or understood, the minutes meant what they said: Ireland *v.* Livingston, 5 L. R. Eng. and Ir. App., 395; Foster *v.* Rockwell, 104 Mass., 167.

OCTOBER 17TH, 1881.—PER CURIAM: The presumptive correctness of the minutes of the board of directors was correctly stated. The authority to the committee to get plans for a new school building from some architect, must receive a reasonable construction. An authority to procure pencil sketches was clearly recognized at a subsequent meet-

ing of the board. Regard must be had to the specifications with which architects usually accompany their plans. The learned Judge took a correct view of the case, and fairly submitted to the jury to find under the whole evidence, whether the understanding of the board was to limit the authority to procuring only preliminary drawings or sketches, or whether it extended to plans and specifications.

Judgment affirmed.